**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **IN RE: ABBOTT LABORATORIES, ET AL., PRETERM INFANT NUTRITION PRODUCTS LIABILITY LITIGATION** | **MDL No. 3026** |
| | **Master Docket No. 1:22–cv–00071** |
| **This Document Relates to:** | **Hon. Rebecca R. Pallmeyer** |
| *Deondrick Brown, Sr., Individually and on behalf of the Estate of Deondrick W. Brown, Jr.; and Rebekah Etienne, Individually and on behalf of the Estate of Deondrick W. Brown, Jr. v. Abbott Laboratories, Inc., et al.,* **Case No. 1:22-cv-02001** | |

## STIPULATION REGARDING EVIDENCE

The parties in the above-referenced case have met and conferred and agreed on the following in order to streamline pre-trial briefing and the presentation of evidence at trial, and stipulate to the following,

1. The parties agree that each party may use documents at trial that mention or pertain to HMOs. However, the parties will not attempt to elicit testimony or make or elicit any suggestions that Abbott was trying to corner the world's supply of HMOs. Nor will the parties argue or suggest any wrongdoing arising from Abbott's patent activity. The parties will not object to the use of documents on the basis that the documents contain references to those topics. All other objections to such documents are expressly reserved.

2. Abbott's counsel, corporate witnesses, and experts will not argue or testify at trial that doctors "prescribe" formula for preterm infants in the NICU, but may use terms such as "administer," "provide," or "order," unless unavoidable through deposition designations.

3. The parties agree not to reference tort reform, frivolous litigation, or unrelated high-profile cases (e.g., the McDonalds hot coffee case) outside of voir dire. Any voir dire questions related to this topic shall be previewed to the opposing party prior to November 3, 2025 unless by agreement of the parties.

4. The parties agree not to reference the size and composition of the law firms involved in this litigation.

5. The parties agree not to introduce any Mead Johnson documents or testimony, unless the adverse party opens the door to permitting such documents or testimony. To the extent a party believes the door has been opened, that party will seek the Court's approval before attempting to admit such evidence.

6. The parties agree not to reference (a) tobacco products/companies or (b) opioids products/companies, or (c) gun products/companies except that the parties may refer to tobacco to illustrate the concept of a risk factor. All other objections are preserved.

7. The parties agree not to reference Sturgis or Colormark, whether in name or by reference unless Abbott opens the door. To the extent a party believes the door has been opened to this evidence, that party will seek the Court's approval before attempting to admit such evidence.

8. The parties agree not to reference the AL16 study, whether in name or by reference (for example, a study "where kids got sick," a study on metabolic acidosis, or a study comparing Abbott's fortifier to Mead's fortifier) unless Abbott opens the door. To the extent a party believes the door has been opened to this evidence, that party will seek the Court's approval before attempting to admit such evidence.

9. The parties agree not to reference Tri-Blend, whether in name or by reference unless Abbott opens the door. To the extent a party believes the door has been opened to this evidence, that party will seek the Court's approval before attempting to admit such evidence.

10. Dr. Sucre will not testify about her publications or reports that were not produced to Defendant. Dr. Sucre may testify about her own clinical experience in diagnosing and treating NEC, but will not reference any publication or report that was not produced to Defendant.

11. Defendant is entitled to introduce the company, including what it manufactures, and the specific steps it took to ensure safety of its products for preterm infants. To the extent Plaintiff believes the door has been opened to additional evidence, Plaintiff will seek the Court's approval before attempting to admit such evidence.

12. Abbott will not introduce or refer to (i) The Report of the Working Group of the NACHHD on Necrotizing Enterocolitis in Preterm Infants to the Secretary of the Department of Health and Human Services or (ii) the press release titled "FDA, CDC, NIH Consensus Statement on Recent Advisory Council Report on Premature Infants and Necrotizing Enterocolitis." Neither party will introduce evidence of efforts to lobby or petition the government. All other objections are preserved. Plaintiff will not introduce evidence of any correspondence or communications between Abbott and federal health agencies in or around 2024 regarding issues related to nutrition for preterm infants. This resolves Abbott's motion in limine 4.

13. Abbott will not elicit testimony that the FDA "approves" infant formula but may elicit testimony that FDA regulates infant formula, and that certain ingredients are required to go through the GRAS process before being used. The parties may elicit testimony

    regarding the different ways an ingredient can go through the GRAS process, including whether any ingredients have been "approved" through that process. The parties may also present evidence on how the regulation of infant formula is different than the FDA regulation and approval of pharmaceuticals and medical devices.

14. The parties' witnesses may testify about the Corpeleijn study, and Dr. Spector will be permitted to present an analysis based on both inclusion and exclusion of the Corpeleijn study.

15. Plaintiff will not introduce evidence of Abbott's total wealth or market capitalization in their case in chief. Plaintiff may introduce evidence relating to sales and/or projected sales of Abbott's formula products during her case-in-chief, and compare the percentage those formula products to Abbott's overall portfolio, subject to the Court's rulings on Abbott's motions in limine.

16. Plaintiff will not introduce evidence about the compensation paid to Abbott's former CEO.

17. Plaintiff will not call Dr. Betensky at trial. Dr. Betensky's meta-analyses, represented by forest plots, are incorporated in Dr. Logan Spector's Reports, Figures 1-6 and Supplemental Figures 1 through 8. Plaintiff will not call Dr. Betensky as a witness in her case-in-chief. Abbott will not object to Dr. Spector's reliance on Dr. Betensky's meta-analyses for lack of foundation. Each party does not waive and reserves the right to call Dr. Betensky in rebuttal, if necessary.

18. Dr. Smith relies on Dr. Blessing's determination that Ms. Etienne's placental tissue showed severe chorioamnionitis with fetal involvement. Abbott will not call Dr. Blessing in its case-in-chief. Plaintiffs will not object to Dr. Smith's reliance on Dr. Blessing's analysis for lack of foundation. Abbott does not waive and reserves the right to call Dr. Blessing in rebuttal, if necessary.

19. The parties agree not to reference Ms. Etienne's criminal history or Plaintiffs' job histories, unless Plaintiffs open the door. To the extent a party believes the door has been opened, that party will seek the Court's approval before attempting to admit such evidence. This resolves Plaintiffs' motions in limine 4 and 5. The parties agree to meet and confer on Mr. Brown's criminal history (Plaintiffs' motion in limine 3) upon the conclusion of his deposition.

20. The parties agree not to reference the manner, time, or circumstances under which the Plaintiffs employed an attorney or the nature of the attorney's fee agreement unless Plaintiffs open the door. To the extent a party believes the door has been opened, that party will seek the Court's approval before attempting to admit such evidence. This does not limit Defense counsel from arguing that no one other than Plaintiffs' attorneys have identified formula as the cause of D.B.'s NEC. This resolves Plaintiffs' motion in limine 12.

21. The parties agree not to reference Ms. Etienne's subsequent pregnancy.

22. The parties agree not to reference or introduce evidence suggesting the existence of other lawsuits or claims involving formula and NEC. This resolves Abbott's motion in limine 3.

To the extent either party has a dispute about the applicability of this stipulation to evidence presented, the parties agree to meet and confer further before seeking relief from the Court.

Respectfully submitted,

/s/ Pearl A. Robertson

ANTHONY D. IRPINO (LA #24727)
PEARL A. ROBERTSON (LA #34060)
airpino@irpinolaw.com
probertson@irpinolaw.com
2216 Magazine Street
New Orleans, LA 70130
Ph. (504) 525-1500
Fax (504) 525-1501

*Attorneys for Plaintiffs*

/s/ Linda T. Coberly

James F. Hurst, P.C.
**KIRKLAND & ELLIS LLP**
333 West Wolf Point Plaza
Chicago, IL 60654
(312) 862-5230
james.hurst@kirkland.com
LEAD COUNSEL

Rebecca Fitzpatrick
**KIRKLAND & ELLIS LLP**
333 West Wolf Point Plaza
Chicago, IL 60654
(312) 862-2000
rebecca.fitzpatrick@kirkland.com

Stephen V. D'Amore
Linda T. Coberly
**WINSTON & STRAWN LLP**
35 W. Wacker Drive
Chicago, IL 60601
(312) 558-5600
sdamore@winston.com
lcoberly@winston.com

*Counsel for Defendant Abbott Laboratories, Inc.*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on October 14, 2025, a true and correct copy of the foregoing Stipulation Regarding Evidence was served on all counsel of record via the Court's electronic filing system.

                                               /s/ Linda T. Coberly

                                               *Counsel for Defendant Abbott Laboratories, Inc.*