IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: ABBOTT LABORATORIES, ET AL., PRETERM INFANT NUTRITION PRODUCTS LIABILITY LITIGATION | MDL No. 3026 <br><br> Master Docket No. 1:22-cv-00071 <br><br> Case No. 22-cv-2001 <br><br> Hon. Rebecca R. Pallmeyer <br><br> JURY DEMAND |
| This Document Relates to: <br><br> *Deondrick Brown, Sr., Individually and on behalf of the Estate of D.B.; and Rebekah Etienne, Individually and on behalf of the Estate of D.B. v. Abbott Laboratories, Inc.* | |

**ABBOTT'S COMBINED RESPONSES TO PLAINTIFFS'
OMNIBUS MOTIONS *IN LIMINE***

**INTRODUCTION**

One key fact in this litigation is undisputed: "there is not enough donated human milk to be used as the only source of nutrition" for the "more than 300,000 infants [who] are born prematurely every year[.]" Dkt. 59-38 (2024 AAP Statement). This Court recognized as much in *Mar*, finding "uncontroverted evidence" of "significant shortfalls in the supply of donor human milk" (*Mar* Dkt. 96 at 13)—shortfalls that have continued to this day, well past D.B.'s birth in 2021. Dkt. 59 (Abbott's 56.1 SOF) ¶¶ 59–60 (presenting Dr. Starc's opinions about intractable shortfalls through 2022); Dkt. 67 (Pls.' Resp. to SOF) ¶¶ 59–60 (no meaningful response); Dkt. 59-38 (2024 AAP Statement) (noting continuing shortfall). This is why the AAP has said that formulas like Abbott's are an "essential" and "necessary" tool in NICUs. Dkt. 59-38. And it is also why this litigation is so dangerous. The AAP itself has sounded the alarm, cautioning that NEC verdicts may "jeopardize the availability" of cow's-milk formula, which serves as a life-saving backup to human milk when it is unavailable or insufficient to support a premature infant's development. *Id*.

Concerned the jury will have a "reaction" to the public-health implications of their theory, Plaintiffs want to stop Abbott from telling the jury the truth—that cow's-milk preterm formulas are a "life-saving" and "life-preserving" backup to human milk (Pls. MILs at 7), and that Plaintiffs' claim that such formulas are "unreasonably dangerous" for premature infants (*id*. at 6) necessarily means they should be removed from NICUs altogether. This is not a "strawman" (*id*.); it's the whole point of Plaintiffs' design theory, which challenges the entire category of cow's-milk formulas as "unreasonably dangerous" simply because they are not human milk—the very thing the AAP has said "there is not enough" of. Dkt. 59-38.

Considerations like these are central to the risk-utility analysis that lies at the heart of Plaintiffs' burden under Louisiana law, which requires them to prove that the risk outweighs both

1

"the burden on the manufacturer of adopting such alternative design and the adverse effect, if any, of such alternative design on the utility of the product." La. Rev. Stat. § 9:2800.56(2). Given that legal requirement, there is absolutely no basis for the Court to prevent the jury from hearing about cow's-milk formula's "life-saving" nature (Pls. MIL No. 11) and the public-health effects of removing cow's-milk formula from NICUs (Pls. MIL No. 8). Quite the opposite: barring this evidence would subvert the truth-seeking function of trial and unfairly prejudice *Abbott* in its defense.

None of Plaintiffs' other contested motions (Pls. MIL Nos. 2 and 9) have any merit either. They too should be denied, while the remainder—Nos. 1, 3, 4, 5, 6, 7, 10, and 12—should be denied as moot, having been resolved or deferred by party agreement. *See generally* Dkt. 92 (Stipulation Regarding Evidence).

## ARGUMENT

1. **Plaintiffs' MIL No. 1: "Exclude References to Alleged Good Corporate Conduct or, in the Alternative, Permit Introduction of Evidence of Bad Corporate Conduct"**

Plaintiffs' MIL No. 1 has been resolved by party stipulation. *See* Dkt. 92 ¶¶ 8, 11.

2. **Plaintiffs' MIL No. 2: "Exclude Personal Opinions and Experiences of Fact Witnesses and Counsel Regarding Abbott's Infant Formula Products"**

Abbott agrees that no witness should provide anecdotal evidence on causation. But Plaintiffs' own cases make clear that physicians "may testify as to their professional experiences with the [product]." *Bayless v. Bos. Sci. Corp.*, 2021 WL 2459275, at *4 (M.D. Fla.), *cited in* Pls. MILs at 3. Applied here, that means the knowledge and experience of treaters like D.B.'s— who are the ones who actually *use* the product—necessarily inform the magnitude of any risk of harm, the current design's "utility" for its anticipated use, and the undeniable "adverse effect" of removing cow's-milk formula from NICUs. La. Rev. Stat. § 9:2800.56(2); *see also* Dkt. 87

2

(Abbott's MIL No. 1) at 5–6 (explaining same). That testimony, along with similar testimony from physician-experts on both sides, remains relevant and admissible in this design-defect trial.

As for barring *employee* testimony that Abbott's formula products "are safe" (Pls. MILs at 3), Plaintiffs' request is overbroad and premature. Again, Abbott agrees that "anecdotal evidence relating to personal experiences" with cow's-milk formula is not generally relevant. *Id*. After all, the only issues remaining for trial are

- whether formula "proximately caused" D.B. to develop NEC (La. Rev. Stat. § 9:2800.54);

- whether it would have been feasible and safer for Abbott to use milk from human women in place of cow's milk in formula (*id*. §§ 9:2800.56(1), 9:2800.59(A)(3));

- whether the risks to be avoided outweighed the costs and burdens of a human-milk-based formula design (*id*. § 9:2800.56(2)); and

- in the unlikely event Plaintiffs carry their burden on the above issues, what compensatory damages should be awarded (*id*. § 9:2800.54).

But Abbott employees must be allowed to rebut the notion that Abbott's cow's-milk formula, as designed, is "unreasonably dangerous" (§ 9:2800.54(B)(2)), so a motion seeking to bar all employee testimony related to the "efficacy and safety" of Abbott's current design is overbroad. In addition, if Plaintiffs are allowed to introduce irrelevant evidence related to Abbott's knowledge and alleged "bad faith" (*see* Dkt. 87 (Abbott's MIL No. 2) at 6–12)), such evidence may open the door to additional evidence sought to be barred by this motion, as drafted. Thus, Plaintiffs' MIL No. 2 is at best premature; any specific objections on this employee-testimony issue should instead "be raised in the fuller framework and context of trial." *Alexander v. Mount Sinai Hosp. Med. Ctr.*, 2005 U.S. Dist. LEXIS 536, at *20–21 (N.D. Ill.) (noting that it is impermissible to "vaguely seek[] to bar evidence without specific references to proffered testimony"); *Austin v. Cook Cnty.*, 2012 WL 1530452, at *4 (N.D. Ill.) (same effect). The Court should deny Plaintiffs' MIL No. 2.

3

3.  **Plaintiffs' MIL No. 3: "Exclude Evidence of Deondrick Brown, Sr.'s Criminal Record"**

The parties have agreed to meet and confer on Plaintiffs' MIL No. 3 upon the conclusion of Mr. Brown's deposition. *See* Dkt. 92 ¶ 19. Thus, ruling on this MIL should be deferred.

4.  **Plaintiffs' MIL No. 4: "Exclude Evidence of Rebekah Etienne's Criminal History"**

Plaintiffs' MIL No. 4 has been resolved by party stipulation. *See* Dkt. 92 ¶ 19.

5.  **Plaintiffs' MIL No. 5: "Exclude Discussion Pertaining to Plaintiffs' Respective Job Histories"**

Plaintiffs' MIL No. 5 has been resolved by party stipulation. *See* Dkt. 92 ¶ 19.

6.  **Plaintiffs' MIL No. 6: "Exclude Discussion of Ms. Etienne's Prenatal Care"**

The parties anticipate resolving Plaintiffs' MIL No. 6 through stipulation.

7.  **Plaintiffs' MIL No. 7: "Exclude 'Cause of Prematurity' Mini-Trials"**

Abbott does not oppose this motion as drafted.

8.  **Plaintiffs' MIL No. 8: "Exclude Straw-Man Mischaracterizations of Plaintiffs' Claims"**

In a three-sentence argument, Plaintiffs say Abbott should be prohibited from describing their position as an effort to remove cow's-milk formulas from NICUs altogether. Pls. MILs at 6. Such a description, they say, would "[m]ischaracteriz[e]" their position and pose a risk that the jury will base its verdict on a "reaction to an extreme position that Plaintiffs are not advancing." *Id*.

Nonsense. That "extreme position" is *exactly* the position Plaintiffs are advancing. Plaintiffs contend that Abbott's formula is "unreasonably dangerous" (Pls. MILs at 6) simply because it "is a cow's milk-based formula" and is not made from "human milk" (Dkt. 69 (Resp. to Mot. for Summ. J). at 4). As the Restatement explains, "[i]n judging a product under risk-utility guidelines, there are only two options. Either the product should have been reasonably

4

[re]designed . . . or the product should not have been marketed at all." Restatement 3d of Torts: Products Liability, § 2 cmt. b. But the only "redesign" Plaintiffs have suggested is that Abbott should have stopped making cow's-milk formula and started making formula from human milk instead. Dkt. 69 (Resp. to Mot. for Summ. J) at 4 (arguing that "human-milk based preterm formula was a feasible alternative for Abbott during the relevant time period"). That is exactly the same as saying that preterm formula made from cow's milk should no longer be sold.

This is also exactly why Plaintiffs' theory is so dangerous. A design-defect theory like Plaintiffs' necessarily threatens to "eliminat[e] whole categories of useful products from the market." *See* Dkt. 58 (Summ. J. Mem.) at 22. Courts routinely reject overbroad and categorical design-defect theories for exactly that reason. *See id.* (discussing *Brockert v. Wyeth Pharms., Inc.*, 287 S.W.3d 760, 770 (Tex. App. 2009) and *Theriot v. Danek Med., Inc.*, 168 F.3d 253 (5th Cir. 1999) (Louisiana law)); *cf. Thibault v. Sears, Roebuck & Co.*, 395 A.2d 843, 846 (N.H. 1978) (warning that "a finding of liability for defective design could result in the removal of an entire product line from the market"). So, yes, eliminating cow's-milk formulas from the market *is* the premise of Plaintiffs' design-defect theory—and there is no basis to prevent Abbott from saying so.

On the contrary, evidence like this bears directly on the jury's design-defect determination under Louisiana law. One of the risks or "adverse effect[s]" (La. Rev. Stat. Ann. § 9:2800.56(2)) of attempting to switch to human milk as the basis for preterm formula is that "there is not enough donated human milk to be used as the only source of nutrition" for the "more than 300,000 infants [who] are born prematurely every year." Dkt. 59-38 (2024 AAP Statement). That in turn could create a massive healthcare crisis in NICUs nationwide—impacting *all* premature infants, not only the small percentage who develop NEC. Under

5

controlling Louisiana law, Abbott is entitled to present that public-health risk to the jury as one of the "adverse effect[s]" arising from Plaintiffs' proposed alternative design. *See* La. Rev. Stat. Ann. § 9:2800.56(2). These are exactly the type of considerations that flow into the design-defect inquiry—which is "an industry-wide inquiry" that in this case goes beyond any single hospital or infant. 1 Louisiana Tort Law § 15.10; *see also, e.g.*, *Thibault*, 395 A.2d at 846 ("The utility of the product must be evaluated from the point of view of the public as a whole").

In fact, Plaintiffs' refusal to acknowledge that their theory would require the elimination of cow's-milk formula effectively concedes they have no viable design-defect claim. Realizing that overtly calling for product elimination is far too "extreme" (Pls. MIL at 6), Plaintiffs are effectively suggesting—without citing any precedent whatsoever—that Abbott had a duty to manufacture and distribute ***two preterm formulas simultaneously***: Plaintiffs' proposed human-milk version ***and*** the supposedly "unreasonably dangerous" cow's-milk version as a fallback (while still facing liability when this fallback is used). But NICUs ***already*** use Abbott's cow's-milk product as a fallback when human milk is unavailable or insufficient to meet critical needs. Those hospitals rely on cow's-milk formula to address the well-documented and incontrovertible shortfalls in donor-milk supply, to accommodate families who decline donor milk for religious or cultural reasons, and to sustain infants who do not thrive on donor milk alone. Plaintiffs' inability to propose a true "alternative design"—a design that satisfies these critical needs—not only confirms the lack of a viable design-defect claim but also highlights the improper, categorical nature of Plaintiffs' claim, which attacks the very existence of a product that indisputably fulfils a critical medical need.

In the end, all signs point in the same direction: What Plaintiffs call an "extreme position" (Pls. MILs at 6) is ***exactly*** the design-defect theory they're pursuing. Acknowledging

6

this is not a matter of "strawman rhetoric" (*id.*); it is reality, and it is directly relevant to the jury's consideration of the statutory design-defect claim at issue. Indeed, it would be enormously prejudicial to ***Abbott*** to exclude this type of evidence and argument. The Court should deny Plaintiffs' MIL No. 8.

9. **Plaintiffs' MIL No. 9: "Exclude Arguments Centered on the Reasonableness of Abbott's Conduct"**

Abbott agrees that a "negligence framework" is "inapplicable" in this case. Pls. MILs at. 6. Indeed, that is exactly why evidence and argument relating to Abbott's knowledge of the claimed risk and alleged bad faith have no place in this trial. *See* Dkt. 87 (Abbott's MIL No. 2) at 6–12 (explaining same); *Bearly v. Brunswick Mercury Marine Div.*, 888 So. 2d 309, 310 (La. Ct. App. 2004) ("defendant-[manufacturer]'s knowledge of the defect is immaterial to plaintiff's [Louisiana Products Liability Act ("LPLA")] claim"); 1 Louisiana Tort Law § 14.01 (in strict liability, "whether the defendant knew or should have known of the risk is irrelevant"). But Plaintiffs cannot have it both ways. If the Court allows Plaintiffs to suggest that Abbott has somehow acted in bad faith—notwithstanding Plaintiffs' narrowing of their case and the sheer irrelevance and obvious prejudice of Plaintiffs' various bad faith arguments—then Abbott is surely entitled to rebut that narrative and to explain that it "did everything a reasonable manufacturer would do." Pls. MILs at 6. This motion should be denied (or deferred, at a minimum).

10. **Plaintiffs' MIL No. 10: "Bar Statements that Abbott's Premature Infant Formula was 'FDA-Approved' or Deemed 'Safe' by the FDA"**

Plaintiffs' MIL No. 10 has been resolved by party stipulation. *See* Dkt. 92 ¶ 13.

7

11. **Plaintiffs' MIL No. 11: "Exclude Descriptions of Abbott's Premature Infant Formula as 'life-saving' or 'life-preserving'"**

Plaintiffs also ask that Abbott be precluded from describing its product as "life-saving" or "life-preserving." This, too, seeks to deprive the jury of the truth. Make no mistake: the American Academy of Pediatrics and Plaintiffs' own medical experts agree that cow's-milk-based preterm formula is "a critically important option" in the care of premature infants when human milk is unavailable. *See* Dkt. 59 (Rule 56.1 SOF) ¶¶ 46–47. That is in part because "there is not enough donated human milk to be used as the only source of nutrition" for the "more than 300,000 infants [who] are born prematurely every year." Dkt. 59-38 (2024 AAP Statement). Preterm infant formula, in other words, is the very definition of a "life-saving" or "life-preserving" product. *See* Pls. MILs at 7. And as explained above, Plaintiffs' design-defect "critique" *is* "tantamount to condemning a product that 'saves babies[.]'" *Id.* There is no way around it; Plaintiffs are literally challenging an entire category of infant nutrition products, without which many infants would not survive.

The jury is entitled to hear this. Indeed, as noted above, this is the very type of "adverse effect" that the jury **must consider** in assessing design-defect liability under the LPLA. *See, e.g.*, *Lavespere v. Niagara*, 910 F.2d 167, 181–84 (5th Cir. 1990) (affirming summary judgment in part because there was "no evidence concerning the nature and extent of the economic problems likely generated by rendering the [original product] unfit for at least fifteen percent of its possible uses"). The life-saving nature of preterm formula—as currently designed—is thus directly relevant to "the LPLA design elements," and that relevance is not substantially outweighed by a "risk of unfair prejudice and juror confusion." Pls. MILs at 7 (incorrectly suggesting otherwise). On the contrary, it would be unfairly prejudicial to **Abbott** to prohibit this type of argument.

8

In any event, Plaintiffs have no objection to the phrases "life-saving" and "life-preserving" if supported by "properly disclosed, admissible exert testimony[.]" *Id*. That support exists in spades. Abbott's health economist expert, Dr. Starc, will testify about intractable shortfalls in human milk, which means many infants would have nothing to eat without cow's-milk-based formula. *See* Dkt. 59 (Abbott's 56.1 SOF) at ¶¶ 59–61, 65–66 (discussing Dr. Starc's opinions). Abbott's NICU nursing expert, Dr. Carter, will testify that "many infants would die of malnutrition" without the option of cow's-milk formulas, which are needed to "guard against growth failure in infants in the NICU." **Ex. A** (B. Carter *Etienne* MDL Rep. (excerpted for public filing)) at 30. Abbott's expert neonatologist, Dr. Martin, will testify to the critical need for cow's-milk-based nutrition products to feed infants when human milk is unavailable or insufficient, explaining that the "elimination of all cow milk products without appropriately modified and fortified substitutions can lead to malnutrition and/or specific nutrient deficiencies." Dkt. 59-18 (C. Martin *Etienne* MDL Rep.) at 33. And Abbott's specific-causation expert, Dr. Smith, will testify that cow's-milk formula is a necessary feeding option and that, in his clinical practice, he "often switch[es] from human milk feedings to preterm formula feedings in the setting of poor growth" (which can have catastrophic consequences). Dkt. 59-03 (B. Smith *Etienne* MDL Rep.) at 3. Plaintiffs' ***own medical experts*** agree that formulas like Abbott's are essential options for feeding infants in the NICU. Dkt. 59 (Rule 56.1 SOF) ¶ 46 (citing Dr. Sucre and Dr. Flanigan).

The record is thus replete with "admissible expert testimony" (Pls. MILs at 7) about the life-saving nature of cow's-milk formula in the NICU, making attorney argument about it not only permissible but absolutely essential in addressing the legal standard governing Plaintiffs' design-defect claim. For all these reasons, Plaintiffs' MIL No. 11 should be denied.

9

12. **Plaintiffs' MIL No. 12: "Exclude All References, Testimony, Exhibits, and/or Argument Regarding the Manner, Time, or Circumstances Under Which the Plaintiffs Employed an Attorney or the Nature of the Attorney's Fee Agreement"**

Plaintiffs' MIL No. 12 has been resolved by party stipulation. *See* Dkt. 92 ¶ 20.

Dated: October 21, 2025

Respectfully submitted,

*/s/ Linda T. Coberly*

James F. Hurst, P.C.
**KIRKLAND & ELLIS LLP**
333 West Wolf Point Plaza
Chicago, IL 60654
(312) 862-5230
james.hurst@kirkland.com
LEAD COUNSEL

Rebecca Fitzpatrick
**KIRKLAND & ELLIS LLP**
333 West Wolf Point Plaza
Chicago, IL 60654
(312) 862-2000
rebecca.fitzpatrick@kirkland.com

Stephen V. D'Amore
Linda T. Coberly
**WINSTON & STRAWN LLP**
300 North LaSalle Drive
Chicago, IL 60654-3406
(312) 558-5600
sdamore@winston.com
lcoberly@winston.com

*Counsel for Defendant Abbott Laboratories, Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing Responses to Plaintiffs' Omnibus Motions in Limine was served upon counsel of record on October 21, 2025 via the Court's electronic filing system.

>  /s/ Linda T. Coberly
>
>  *Counsel for Defendant Abbott Laboratories, Inc.*